UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JASON LISOSKI,<br><br>              Plaintiff,<br><br>    v.<br><br>KING COUNTY, *et al.*,<br><br>              Defendants. | CASE NO. 2:23-cv-00536-RSL<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on "Defendants' Motion for Summary Judgment." Dkt. # 26. Plaintiff alleges that defendants failed to accommodate his religious beliefs in violation of Title VII, 42 U.S.C. § 2000e, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60.030, *et seq*. Defendants argue that the claims fail as a matter of law because plaintiff's objections to the COVID-19 vaccine could not be accommodated without undue hardship.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 1

motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to plaintiff,[1] the Court finds as follows:

## BACKGROUND

On August 10, 2021, the King County Executive issued an order requiring all County executive branch employees to be fully vaccinated against COVID-19 by October 18, 2021, unless they were entitled under law to an accommodation on account of disability or religious belief. Exec. Order No. ACO-8-27-EO (found at https://kingcounty.gov/en/search).[2] At the time, plaintiff was employed as a Lifeguard/Water Safety Instructor at the Weyerhaeuser King County Aquatic Center. On September 15, 2021, plaintiff claimed a religious exemption to the vaccination requirement and requested accommodation. Dkt. # 31-1. He notified his employer that the COVID-19 vaccines had "made use of aborted fetal cell lines in some form during any stage of research, production, and/or testing," and that while he was not "morally opposed to all vaccines," the COVID-19 vaccines' "connection to abortion" made them objectionable. Dkt. # 33-2 at 1. Now that he was aware that other vaccines and medications had also made use of aborted fetal cell lines, he would similarly eschew their use in the future. Dkt. # 33-2 at 1-2.

---

[1] Plaintiff's unexplained objections to parts of Mr. Dunwiddie's declaration (Dkt. # 32 at 4) are overruled.

[2] The Court takes judicial notice of the fact that the conduct of which plaintiff complains occurred during the COVID-19 pandemic and of the cited Executive Order. *Denis v. Ige*, 538 F. Supp. 3d 1063, 1068-69 (D. Haw. 2021) (taking judicial notice of public health statements and emergency proclamations published on the internet).

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 3

Plaintiff was granted an exemption from the vaccination mandate and met with human resources to identify potential accommodations and to fill in a request form. Dkt. # 31 at ¶¶ 16-17. Plaintiff proposed that he be permitted to test for COVID-19 and increase use of personal protective equipment in lieu of vaccination. Dkt. # 31-2 at 2 and 5; Dkt. # 33-2 at 2. Defendants considered plaintiff's proposed accommodations as well as other potential measures and the possibility of reassignment, but found that a reasonable accommodation that would allow plaintiff to safely perform the essential functions of his job was not available. Dkt. # 30 at ¶ 18; Dkt. # 31-3 at 2-3. Defendants concluded that unvaccinated Lifeguard/Water Safety Instructors "could not be accommodated without undue hardship to the County based on the significant risk of their exposing members of the public or other employees to the virus. The essential functions of the . . . position involves numerous and frequent interactions with other County employees and members of the public." Dkt. # 30 at ¶ 16.

Plaintiff's request for an accommodation was denied on December 1, 2021. Dkt. # 31-3. His employment at the Aquatic Center was terminated effective December 15, 2021. Dkt. # 31 at ¶ 21.

## DISCUSSION

To allege a prima facie case of religious discrimination under a failure-to-accommodate theory, an employee must show that "(1) []he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) []he informed [his] employer of the belief and conflict; and (3) the employer discharged, threatened, or

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 4

otherwise subjected [him] to an adverse employment action because of [his] inability to fulfill the job requirement." *Keene v. City and County of San Francisco*, No. 24-1574, 2025 WL 341831, at *2 (9th Cir. Jan. 30, 2025) (unpublished) (internal citations, quotation marks, and alterations omitted). Similarly, a prima facie claim of failure to accommodate religious practices under the WLAD requires a showing that (1) plaintiff had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual discriminatory treatment. *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 501-02 (2014). Defendants apparently concede that plaintiff has raised a prima facie case of religious discrimination.[3] The burden therefore shifts to the employer to show "that it initiated good faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002) (quoting *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993)).

Title VII requires that employers "reasonably accommodate... an employee's or prospective employee's religious observance or practice" unless the employer is "unable" to do so "without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). A "hardship is more severe than a mere burden" and the "modifier 'undue' means that the requisite burden, privation, or adversity must rise to an 'excessive' or

---

[3] The Ninth Circuit has held that an objection based on a vaccine's derivation from aborted fetal cells, if sincerely held, can support a Title VII religious accommodation claim. *Keene v. City and County of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (unpublished).

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 5

'unjustifiable' level." *Groff v. DeJoy*, 600 U.S. 447, 469 (2023). To establish undue hardship, an employer "must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business," taking into account "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating costs of an employer." *Id.* at 470 (internal citation, quotation marks, and alterations omitted). "Undue hardship is shown when a burden is substantial in the overall context of an employer's business." *Keene*, 2025 WL 341831, at *2.

In the context of COVID-19 vaccine accommodation cases, courts have found that non-economic costs, such as adverse impacts on an employer's mission and potential safety risks, are relevant factors to be considered. *Lavelle-Hayden v. Legacy Health*, 744 F.Supp.3d 1135, 1157-59 (D. Or. 2024); *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp.3d 1117, 1134–35 (C.D. Cal. 2023). *See also Groff*, 600 U.S. at 475-76 (J. Sotomayor, concurring) (non-COVID case acknowledging that "the conduct of the employer's business" includes the business' labor force, making deprivations and hardships imposed on co-workers relevant to the undue hardship analysis); *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988) (non-COVID case acknowledging spiritual costs). In addition, the reasonableness of an accommodation must be evaluated based on the knowledge and information available to the employer at the time the accommodation decision was made. *Efimoff v. Port of Seattle*, No. 2:23-CV-01307-BAT, 2024 WL

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 6

4765161, at *13 (W.D. Wash. Nov. 13, 2024); *Lavelle-Hayden*, 744 F.Supp.3d at 1150, 1152, 1158.

By the winter of 2021-22, the Pacific Northwest had lived through two years of COVID-19 infections, and it was generally understood that the SARS-CoV-2 virus spread from person to person through aerosol transmission,[4] that infected persons could spread the virus before the onset of symptoms, and that older adults or those with certain underlying medical conditions were at higher risk for developing a severe, potentially deadly, COVID-19 illness. Dkt. # 28-1 at ¶ 8.[5] "Based on available data at the time . . . , work in large spaces like pool facilities or even outdoors was not clearly associated with a decreased risk of infection." Dkt. # 28-1 at ¶ 54. In addition, the act of swimming involves physical exertion which elevates breathing levels for sustained periods of time, thereby increasing both the risk of sharing and contracting COVID-19. Dkt. # 28-1 at ¶ 67. Plaintiff does not dispute that an unvaccinated individual in a large indoor pool facility – whether an employee or a patron -- poses a risk of transmitting COVID-19 to others in the facility.

---

[4] The relatively recent realization that the virus was transmitted through aerosol rather than droplets "implied that infections could occur over greater distances than previously thought, and in spaces that were previously inhabited by individuals with COVID-19. This mechanism explained cases and outbreaks of transmission spread over distance and over time versus direct, near contact." Dkt. # 28-1 at ¶ 54.

[5] Defendants produced the declaration and report of Dr. John B. Lynch, a board-certified infectious disease clinician, a Professor of Medicine at the University of Washington School of Medicine, and the Associate Medical Director at Harborview Medical Center. Dr. Lynch led UW Medicine's response to the COVID-19 pandemic from February 2020 to December 2023. Dkt. # 28-1 at ¶ 2. Plaintiff has not offered any medical or scientific evidence to contradict Dr. Lynch's opinions.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 7

  In an effort to keep employees and customers safe, the Aquatic Center closed in March 2020 in response to the COVID-19 pandemic. Dkt. # 27 at ¶ 9. When it began a phased re-opening process in April 2021, the Aquatic Center required masks to be worn until a person entered the pool, limited the number of people in the facility and in the pool at any given time, required swimmers to maintain social distancing, and took other precautions. Dkt. # 27 at ¶¶ 11-12. The COVID-19 vaccines were released by different manufacturers and for different populations between December 2020 and January 2022. Dkt. # 28-1 at ¶¶ 15-17 and 25-28. The vaccines both decreased the risk of becoming infected and decreased the severity of the disease if infection occurred. Dkt. # 28-1 at ¶ 37. By the time the Delta variant of the COVID-19 virus became prevalent in the summer and fall of 2021, however, vaccination rates were dropping. Dkt. # 28 at ¶¶ 14-15. The strategies that had been used earlier in the pandemic, such as masking, testing, and social-distancing, were insufficient to slow the spread of the new variant.

> Hospitalizations in the state due to COVID-19 were at an all-time high in late August of 2021. At the time, unvaccinated individuals between the ages of 16 and 64 were 10 times more likely to be hospitalized than those who were vaccinated. In September of 2021, 95% of hospitalized patients were unvaccinated.

Dkt. # 28-1 at ¶ 47 (footnotes omitted). It was in this context that King County required all executive branch employees to be fully vaccinated by October 18, 2021. Dkt. # 28 at ¶ 20.

  The only evidence in the record regarding the efficacy of masking and testing in preventing the spread of COVID-19 suggests that these practices are ineffective or at least substantially inferior to vaccines. Despite implementing testing, masking, and social

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 8

distancing protocols and the availability of vaccines, Aquatic Center staff still tested positive for COVID-19, forcing the facility to close again for a period of time. Dkt. # 27 at ¶ 13. There are no studies showing that masks reduce infection and transmission in the workplace, and testing often fails to detect infection for a number of reasons. Dkt. # 28-1 at ¶¶ 67 and 77. In a pool environment, masking would be particularly ineffective since a mask cannot be safely worn in the water. Dkt. # 28-1 at ¶ 67. During his deposition, plaintiff acknowledged that he had no "scientific or medical basis to conclude that" increased personal protective equipment or testing would meaningfully reduce the risk of transmitting COVID-19. Dkt. # 29-1 at 17.[6] In addition, plaintiff's job responsibilities included teaching swimming lessons to all ages and abilities (including children, the elderly, and the disabled) and providing lifesaving care (including in-water rescues and CPR) as necessary. Dkt. # 27 at ¶¶ 17-18. These activities require close physical interactions with patrons, involve situations where masks would generally not be worn, and have the inherent risk of transmitting COVID-19. While plaintiff was not teaching swim classes during the relevant period, doing so was part of the job responsibilities of a Lifeguard/Water Safety Instructor. Dkt. # 27 at ¶¶ 17-18. Plaintiff has not produced any evidence disputing the underlying medical data or casting doubt on defendants' good faith belief that testing and masking would not adequately protect the health and safety of the Aquatic Center employees or patrons. In the context of a job position that exists to keep

---

[6] His counsel's attempt to manufacture a triable issue of fact by asserting that the inadequacy of the proposed accommodation is disputed, Dkt. # 32 at 5, is unavailing in light of the existing record.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 9

the swimming public safe, allowing an unvaccinated lifeguard would pose a risk to both the employer's mission and the safety of its employees and customers. Providing the ineffective accommodations requested would therefore pose an undue hardship on the employer.

Plaintiff argues that defendants failed to engage in a reasonable, individualized accommodation process and that they could have continued to accommodate plaintiff's religious beliefs by utilizing the safety measures in place during the spring and summer of 2021. These arguments are considered below.

(a) Plaintiff argues that a good faith interactive process designed to find a reasonable accommodation of his religious beliefs would have involved an effort to calculate the precise risk plaintiff, as opposed to a generic unvaccinated person, posed to the Aquatic Center's mission, employees, and patrons. Plaintiff argues that defendant's failure to evaluate his absences and sick leave use, his viral load at some undefined point in time, his history of transmitting COVID-19 to co-workers and/or patrons, and any existing test results or other information related to the risk plaintiff posed showed that it was simply relying on generalities and assumptions to support the claim of undue hardship. Plaintiff concedes, however, that COVID-19 posed a threat to public safety, that the vaccine was the single best tool for mitigating the safety risk posed by the virus, and that a religious accommodation that creates a safety risk constitutes a hardship for the employer. Dkt. # 29-1 at 13; Dkt. # 28-1 at ¶¶ 56-57; Dkt. # 32 at 15. He offers no medical or scientific evidence to support his assertions that testing, masking, and/or social distancing

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 10

could reduce the risks of infection and transmission in the workplace or to dispute the efficacy of vaccines. Nor does he cite any authority for his implicit suggestions that an employer must prioritize religious accommodation over employee and customer safety or that an employer must wait until injury occurs before evaluating the burden of a possible accommodation. In light of plaintiff's concessions and the unrebutted expert testimony of Dr. Lynch, the failure to study plaintiff's individual work and medical history does not throw into doubt defendants' good faith in attempting to find an accommodation or invalidate its undue hardship determination.

      Plaintiff further argues that a good faith interactive process would have considered the availability of reassignment, modifications to his job responsibilities, and paid or unpaid leave as possible accommodations. Defendants did, however, consider "alternative work, remote work or reassignments to other positions" in addition to the use of personal protective equipment, social distancing, and testing before determining that the Aquatic Center could not reasonably accommodate plaintiff's unvaccinated status. Dkt. # 30 at ¶ 18.[7] Plaintiff was unable to produce any evidence disputing Dr. Lynch's opinion that an unvaccinated person's presence in the Aquatic Center posed a materially higher risk compared with a vaccinated person's presence. Plaintiff does not dispute that the position he held required him to be on-site and that his job description required close, physical interactions with patrons (regardless whether he was then teaching swim classes or

---

[7] The record shows that lifeguards and instructors fill their down time with cleaning and maintenance tasks at the Aquatic Center. There is no evidence, however, that such additional activities constituted an alternative position that was empty and for which plaintiff was qualified.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 11

whether he could use a mask/tube combination when performing CPR). Instead, plaintiff asserts that defendants should have altered or waived the essential functions of his position, either allowing him to stay home indefinitely or relieving him from teaching obligations and requiring co-workers to provide any necessary rescue and life-saving care. But plaintiff was employed as a lifeguard and swimming instructor. He could not perform the essential duties of either of these roles while masked, maintaining social distancing, or on leave. *See* Dkt. # 27-2. Plaintiff has not raised a triable issue of fact regarding either defendants' good faith in evaluating his request for accommodation or their determination that accommodating plaintiff's beliefs would impose an undue hardship.

    (b) Plaintiff maintains that the safety measures in place during the spring and summer of 2021 were adequately protective, as shown by the fact that defendants continued to allow unvaccinated members of the public to access the facility as long as they provided a current negative test result. Once the effectiveness of the COVID-19 vaccines had become apparent and it was possible to largely avoid serious illness and the costs associated with worker absences and facility closures, defendants were not required to settle for inferior protective measures in order to accommodate plaintiff's religious beliefs. To hold otherwise would elevate religious beliefs above the personal safety of co-workers and customers. While plaintiff correctly points out that an accommodation need not be the best for or least onerous on an employer to be reasonable, if an accommodation for plaintiff would create an avoidable risk to the health and safety of others, the burden is undue.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 12

      The fact that Aquatic Center customers could enter the facility and use the pool unmasked if they produced a recent negative test result might, in some circumstances, raise an inference that the Aquatic Center did not, in fact, consider the presence of unvaccinated employees as an undue hardship to its mission, its employees, and/or its patrons. But in this case, the record does not support such an inference. The time patrons spent in the Aquatic Center was limited compared to the time staff spent in the facility. Dkt. 27 at ¶ 14. More importantly, patrons did not have any of the job responsibilities that made an unvaccinated lifeguard/swim instructor a risk: patrons did not teach swim classes and were not expected to perform safety and rescue functions. *Id*. And, as a practical matter, "a substantial majority of the Aquatic Center's customers provided proof of vaccination rather than proof of a negative test." *Id.* Finally, the vaccination exception for patrons was in keeping with public health directives, as was the vaccination requirement for those working at the facility. Safely operating a public swimming/diving facility following the appearance of the COVID-19 virus was incredibly challenging for a number of reasons, not least of which was the developing scientific consensus about how best to reduce transmission rates. Defendants' decision to follow the recommendations of public health agencies does not throw doubt on the sincerity of their determination that an unvaccinated lifeguard would pose an undue hardship.

      Plaintiff – and almost every court to consider the matter – agrees that an accommodation which poses a significant health or safety risk to co-workers or customers constitutes an undue hardship for purposes of a failure-to-accommodate claim. Dkt. # 32 at

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 13

15. *See Savel v. MetroHealth Sys.*, No. 24-4025, 2025 WL 1826674, at *2 (6th Cir. July 2, 2025); *Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85 (1st Cir. 2025); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021); *Allbright v. S. California Permanente Med. Grp. Inc.*, No. EDCV 23-0022 JGB (DTBX), 2025 WL 2205812, at *10 (C.D. Cal. July 30, 2025); *Rolovich v. Wash. State Univ.*, No. 2:22-CV-0319-TOR, 2025 WL 48361 (E.D. Wash. Jan. 6, 2025); *Mohamed v. Full Life Care*, No. 2:22-CV-01010-KKE, 2024 WL 4371584, at *2 (W.D. Wash. Oct. 2, 2024); *Williams v. Legacy Health*, No. 3:22-CV-06004-TMC, 2024 WL 3993162, at *7 (W.D. Wash. Aug. 29, 2024); *Lavelle-Hayden*, 744 F.Supp.3d at 1158-59; *Howe v. Mass. Dep't of Corr.*, No. 4:22-CV-40119-MRG, 2024 WL 3536830, at *1 (D. Mass. July 25, 2024); *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp. 3d 1117, 1135 (C.D. Cal. 2023); *Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265(DLI)(VMS), 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023). Even courts that deny motions for summary judgment on the issue recognize that accommodations which would increase the risk of COVID-19 infections pose an undue hardship: the sticking point in those cases is that defendants had not established as a matter of law that such risks would arise. *Shirley v. Washington State Dep't of Fish & Wildlife*, No. 3:23-CV-05077-DGE, 2025 WL 1374977, at *14 (W.D. Wash. May 9, 2025) (defendants failed to show that allowing plaintiffs to continue working unvaccinated "would have posed an undue hardship within the specific context of the workplace at [the Department of Fish & Wildlife] during the relevant time period."); *Strandquist v. Wash. State Dep't of Soc. & Health Servs.*, No. 3:23-CV-05071-TMC, 2024 WL 4645146, at *12

(W.D. Wash. Oct. 31, 2024), *reconsideration denied*, No. 3:23-CV-05071-TMC, 2024 WL 4979859 (W.D. Wash. Dec. 4, 2024) (no evidence that defendant evaluated the risks the proposed accommodation posed or whether the accommodation would be cost-prohibitive); *Varkonyi v. United Launch Alliance, LLC*, No. 2:23-CV-00359-SB-MRW, 2024 WL 1677523 (C.D. Cal. Feb. 21, 2024) (finding that the lack of evidence regarding infection rates among defendant's employees now that the vast majority had complied with the vaccine mandate precluded judgment as a matter of law in defendant's favor). The Court finds that in the context of this case, including defendants' mission, a lifeguard/water safety instructor's essential functions, the population served, the inferior effectiveness of existing precautions, and the efficacy of vaccines in preventing the transmission of the virus, accommodating an unvaccinated lifeguard would significantly increase the risk of COVID-19 infections for plaintiff, his co-workers, and Aquatic Center patrons, thereby posing an undue hardship on the employer.

    In making this finding, the Court does not mean to suggest that the fact-specific inquiry regarding undue hardship in a COVID-19 vaccine case can be satisfied simply by pointing to a public health crisis and the scientific consensus that vaccination was the best way to reduce viral transmission and improve public health. After all, the vaccine mandate itself contemplated exemptions for religious and/or medical reasons. It is entirely possible that some Aquatic Center positions could be performed remotely or in such a way that an unvaccinated employee would not threaten the safety of defendants' services, employees, or patrons. But in this case the relevant factors show that plaintiff could not perform the

essential responsibilities of his job without posing just such a risk. Plaintiff has not presented any evidence from which a reasonable jury could conclude that accommodating plaintiff – and thereby increasing the COVID-19 risks at the Aquatic Center -- would not pose an undue hardship on the conduct of the employer's business.

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.

DATED this 2nd day of September, 2025.

Robert S. Lasnik
United States District Judge